UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELVIN B.,

                 Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

6:21-CV-06018 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Kelvin B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted, and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on December 11, 2018.  (Dkt. 6-2 at 11; Dkt. 6-5 at 2-5).[1]   In his application, Plaintiff alleged disability beginning on October 31, 2018.  (Dkt. 6-2 at 11; Dkt. 6-5 at 2).   Plaintiff's application was initially denied on March 21, 2019.  (Dkt. 6-2 at 11; Dkt. 6-4 at 2-5).   A telephone hearing was held before administrative law judge ("ALJ") John G. Farrell on May 20, 2020.  (Dkt. 6-2 at 11, 42-90).  On June 3, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 11-25).  Plaintiff requested Appeals Council review; his request was denied on November 9, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 2-6).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

## I.    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through March 31, 2023.  (Dkt. 6-2 at 13).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 31, 2018, the alleged onset date.  (*Id*.).

- 4 -

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: attention deficit hyperactivity disorder (ADHD), impulse control disorder, major depressive disorder, anxiety disorder, posttraumatic stress disorder (PTSD), and intellectual disorder. (*Id.* at 14). The ALJ further found that Plaintiff's medically determinable impairments of obesity and chronic low back pain were non-severe. (*Id.* at 14-15).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 15). The ALJ particularly considered the criteria of Listings 12.04, 12.05, 12.06, and 12.08 in reaching his conclusion. (*Id.* at 15-18).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> Can perform simple routine tasks with occasional interaction with the public, coworkers and supervisors; routine tasks with occasional interaction with the public, coworkers and supervisors; infrequent workplace changes gradually introduced; and no production-paced work.

(*Id.* at 18). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 23).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner, laundry worker, and material

handler.  (*Id.* at 24).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.*).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the RFC is not supported by substantial evidence.  In support of this argument, Plaintiff contends that the ALJ erred by: (1) improperly discounting the medical opinion of consultative examiner Agnes Jonas, Psy.D., while crediting non-examining physician opinions; and (2) failing to develop the record by obtaining updated intelligence testing.  (Dkt. 9-1 at 10-18).  The Court has considered Plaintiff's arguments and, for the reasons discussed below, finds that they are without merit, and that the Commissioner's decision is supported by substantial evidence.

### A.   Assessment of Medical Opinion Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  It is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id*.  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .'  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial

evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).  However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017).  Because Plaintiff's claim was filed on December 11, 2018, the new regulations, codified at 20 C.F.R. § 404.1520c apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the

examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how she

considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors.  *Id.*

Dr. Jonas examined Plaintiff on February 11, 2019, and diagnosed attention deficit hyperactive disorder combined type, impulse control disorder, and persistent depressive disorder.  (*See* Dkt. 6-7 at 14-18).  Dr. Jonas noted that Plaintiff had no previous psychiatric hospitalizations, is not on any psychotropic medication, and had not received outpatient treatment aside from a period of about two months in 2012.  (*Id.* at 14).  She noted the presence of anxiety related symptomology and concentration difficulties, and estimated Plaintiff's cognitive functioning as below average.  (*Id.* at 15, 16).  Dr. Jonas described Plaintiff as cooperative, appropriately dressed, and well-groomed with fair insight and judgment.  (*Id.*).

Dr. Jonas provided the following opinion regarding Plaintiff's limitations:

There is no evidence of limitation in understanding, remembering, or applying simple directions and instructions.  There is mild to moderate limitation in using reason and judgment to make work related decisions. There is moderate to possibly marked limitation interacting adequately with supervisors, co-workers and the public.  There is moderate limitation in sustaining concentration and performing a task at a consistent pace.  There is no evidence of limitation sustaining an ordinary routine and regular attendance at work.  There is moderate to marked limitation in regulating emotions, controlling behavior, and maintaining well-being.  There is no evidence of limitation maintaining personal hygiene and appropriate attire or being aware of normal hazards and taking appropriate precautions.  The

difficulties are caused by cognitive deficits, emotional dysregulation, and impulsivity.

The results of the present evaluation appear to be consistent with psychiatric and cognitive problems and this may significantly interfere with [Plaintiff's] ability to function on a daily basis.

(*Id.* at 17).  The ALJ found the majority of Dr. Jonas's opinions "mostly persuasive" while the portions suggesting the presence of marked limitations not persuasive, explaining as follows:

Dr. Jonas' opinions are mostly persuasive in regards to moderate limitations of function, as this is an examining physician with specific program knowledge and findings of moderate limitations of function are consistent with other evidence in the record and subjective complaints.  However, portions of opinion regarding marked limitations of function are not persuasive, as marked limitations of function are not supported by the record and inconsistent with limited mental health treatment records showing a long history of noncompliance (Exhibits B1F, B3F, B16F and B17F).

(*See* Dkt. 6-2 at 22).

Plaintiff argues that the ALJ erred in his assessment of Dr. Jonas' opinion by improperly discounting the opinion that Plaintiff had "moderate to possibly marked" limitation interacting adequately with supervisors, co-workers and the public and "moderate to marked" limitations in regulating emotions, controlling behavior, and maintaining well-being.  The Court disagrees and finds that the ALJ's decision makes clear the basis for his assessment of Dr. Jonas' opinions.  In addition to finding the marked limitations not supported by the administrative record, the ALJ also identified Plaintiff's

limited mental health treatment and record of noncompliance with treatment as additional reasons to find those portions less persuasive.

As to Plaintiff's limited treatment, the record reflects that Plaintiff received mental health therapy for approximately six months in 2012, or six years before his alleged onset date. The discharge summary from those therapy sessions reflects that Plaintiff "struggled with attendance to psychiatric appointments and did not comply with recommended medication management." (Dkt. 6-7 at 4). The records further note that while he was engaged in his treatment, he had success in improving communication and relationships, but because of his continued struggles to maintain attendance and failure to respond to outreach from the facility urging him to return to treatment, his case was closed. (*Id.*). Plaintiff's only other mental health treatment records were from Genesee Mental Health beginning in April of 2019. (*Id.* at 594). Plaintiff attended appointments with a therapist at Genesee Mental Health Center on April 26, 2019; May 17, 2019; August 8, 2019, August 29, 2019; September 17, 2019; October 18, 2019; December 11, 2019; and February 24, 2020. The records reflect that Plaintiff initially sought treatment following his wife's miscarriage and to address a concern that his temper interfered with his ability to work. (Dkt. 6-7 at 594). Plaintiff reported having depressed mood most days for over two years, which was exacerbated by a fear he would not find a job and would have to rely on SSI. (*Id.* at 570). Records from September 2019 and April of 2020 document a lack of progress due to Plaintiff's failure to engage in treatment. (*Id.* at 569, 646). In addition, there is no

evidence in the administrative record of Plaintiff ever having taken medication for his mental health.

While as Plaintiff notes, an ALJ may not fault a claimant for not seeking mental health treatment or deem a lack of treatment alone to constitute substantial evidence, *Kent v. Saul*, No. 19-CV-097-MJR, 2020 WL 4581693, at *3 (W.D.N.Y. Aug. 10, 2020) ("It has been noted by courts that 'faulting a person with diagnosed mental illnesses . . . for failing to pursue mental health treatment is a questionable practice.'" (quoting *McGregor v. Astrue*, 993 F. Supp. 2d 130, 143 (N.D.N.Y. 2012))), the ALJ nevertheless can consider the lack of a substantial treatment record in assessing the severity of mental health limitations, *Ferry v. Saul*, No. 19-CV-1642L, 2020 WL 6699520, at *3 (W.D.N.Y. Nov. 13, 2020) ("To the extent that the ALJ interpreted plaintiff's failure to seek or undergo mental health treatment in 2010-2011 and thereafter as evidence that she did not suffer from greater-than-minimal limitations during that period, his reasoning was sound."). *See also Kelly S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1620-DB, 2022 WL 2009564, at *6 (W.D.N.Y. June 6, 2022) (ALJ reasonably relied on and found persuasive opinion from medical provider that "Plaintiff's mental impairments were at most mild, and were not severe, given that Plaintiff did not seek mental health treatment throughout the relevant period"); *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *6 (S.D.N.Y. Mar. 21, 2022) ("The ALJ did not err in relying on plaintiff's history of non-treatment for her claimed mental impairments in formulating her RFC.").

Likewise, Plaintiff's noncompliance with treatment is an appropriate consideration. *Vincent A. v. Comm'r of Soc. Sec.*, No. 20-CV-01802-MJR, 2022 WL 17139512, at *6

(W.D.N.Y. Nov. 22, 2022) ("The ALJ noted that Plaintiff engaged in minimal treatment. . . . In determining disability, an ALJ may properly consider whether a claimant complied with treatment recommendations."); *Kenneth W. v. Comm'r of Soc. Sec.*, No 1:19-CV-0825, 2020 WL 7385251, at *7 (W.D.N.Y. Dec. 16, 2020) (ALJ properly considered plaintiff's noncompliance with treatment as relevant to the evaluation of his subjective allegations); *Scott v. Comm'r of Soc. Sec.*, No. 19-CV-00959, 2020 WL 6205693, at *4 (W.D.N.Y. Oct. 22, 2020) (holding that non-compliance with mental health treatment alone will not provide substantial evidence to support an RFC, but is an appropriate factor "in evaluating a plaintiff's subjective complaints"). Similarly, it was appropriate for the ALJ to consider that Plaintiff has not taken any medication for his mental health limitations. *See Patterson v. Saul*, No. 19-CV-465F, 2020 WL 5642187, at *5 (W.D.N.Y. Sept. 22, 2020) (ALJ appropriately considered fact that "[d]espite several years of mental health counseling, . . ., Plaintiff was not prescribed medication for any psychological symptoms").

In sum, it was not error for the ALJ to note the lack of a longitudinal record of mental health treatment in connection with his assessment of the medical opinion evidence.

Plaintiff also challenges the ALJ's failure to give Dr. Jonas' opinion greater weight while at the same time, finding the opinions of the non-examining physician's opinions mostly persuasive. The ALJ explained his assessment of the non-examining physicians as follows:

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services (Exhibits B1A and B3A) also supported a finding of 'not disabled.' Although these are non-examining physicians, and therefore their opinions do not as a general matter deserve as much consideration as those of examining or treating physicians, these opinions are mostly persuasive, particularly in a case like this in which

there exist a number of other reasons to reach similar conclusions (as
explained throughout this decision).

(Dkt. 6-2 at 22).  Plaintiff argues that these opinions were issued without the benefit of a

full record and cannot provide substantial evidence for the ALJ's conclusions.  But the ALJ

expressly recognized that while the opinions came from non-treating sources, he was

nevertheless taking them into consideration as the opinions were otherwise consistent with

his overall conclusions.[2]  This was not error.

"It is well settled that an ALJ is entitled to rely upon the opinions of both examining

and non-examining State agency medical consultants, since such consultants are deemed

---

[2]     The ALJ summarized his conclusions as follows:

Based on the foregoing, the undersigned finds [Plaintiff] has the above
residual functional capacity assessment, which is supported by the evidence
of record showing sparse treatment for his alleged conditions and reported
abilities with performing more than a wide range of adequate activities of
daily living.  In fact, primary care treatment records documented that on April
25, 2019, showed no past medical history on file and not prescribed any
medications.  Most significantly, [Plaintiff] reported that he was currently
unemployed, but attended several recent interviews and hopeful to resume
regular work.  He reported generally feeling well with no difficulties
walking, mood was stable and did not feel he needed additional supports
(Exhibit B18F, pp. 5-7).  Upon follow-up, he was trying to lose weight and
went to the gym on Saturdays and Sundays for three weeks straight (Id., p.
3).  In December 2019, the claimant reported obtaining employment and
enjoyed working with his uncle doing maintenance (Exhibit 17F, pp. 8-9).
Most recent mental status evaluation, in February 2020, showed that
[Plaintiff] appeared alert with sustained attention, fully oriented, intact
memory, cooperative, good eye contact, normal level of activity and
appeared neat.  He had good articulation with normal speech, euthymic
mood, appropriate affect, no suicidal thoughts and fair insight and judgment
(Id., pp. 6-7) but continued to show lack of engagement (Id., p. 3).
Furthermore, [Plaintiff] currently lives independently and conceded that he
could perform past work as a security guard or similar job, but that part-time
would be better and could work a job if little contact with other people.
Despite significant mental health symptoms and reported falling asleep while

to be qualified experts in the field of social security disability." *Sherry L. v. Comm'r of Soc. Sec.*, No. 20-CV-01432, 2022 WL 2180159, at *5 (W.D.N.Y. June 16, 2022); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that medical opinions of consultative examining physicians can constitute substantial evidence); *Jamie C. v. Kijakazi*, No. 3:21-CV-105 (ATB), 2022 WL 4356182, at *9 (N.D.N.Y. Sept. 20, 2022) ("However, the ALJ is entitled to give the opinions of non-examining sources more weight than those of treating or examining sources where there is record evidence to support such a determination." (quotation and citation omitted)); *Rose o/b/o X.G.T.A. v. Berryhill*, No. 18-CV-509 (LGS)(SN), 2019 WL 2453352, at *3 (S.D.N.Y. Feb. 4, 2019) ("In addition, when supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence."), *report and recommendation adopted*, No. 18 CIV. 509 (LGS), 2019 WL 2498279 (S.D.N.Y. June 17, 2019).

Here, the ALJ appropriately considered the medical opinion evidence in the context of the overall record.  Plaintiff has not identified any meritorious basis to conclude that the ALJ erred in his assessment of the opinions of non-examining providers, either apart from

---

watching television shows, he later testified as watching sports as one of his hobbies (Testimony), which is totally inconsistent with disabling conditions as alleged.

(Dkt. 6-2 at 23).

or in connection with, the assessment of Dr. Jonas' opinions.   Accordingly, the Court rejects Plaintiff's challenge to the ALJ's assessment of medical opinion evidence.

### B.     Development of the Record

Plaintiff also challenges the ALJ's failure to obtain updated intelligence testing, arguing that the ALJ had an obligation to further develop the record to assess "the possibility that Plaintiff suffered from a neurocognitive disorder."  (Dkt. 9-1 at 15).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits."  *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).  "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."  *Puckett v. Berryhill*, No. 17 CIV 5392 (GBD)(KHP), 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018).  "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so."  *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  However, the ALJ's duty to develop the record is not limitless.  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete

- 16 -

medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks and citation omitted).

Plaintiff challenges the ALJ's finding that his intellectual disorder was a severe impairment without the benefit of recent IQ testing, contending that the ALJ had a duty to obtain more recent scores.  Specifically, the only testing in the record was administered in May of 2001 and June of 2004, too remote to be considered reliable scores.  But a duty to develop the record does not extend to the ALJ having an obligation to examine whether Plaintiff has undisclosed conditions or to rule out other potential diagnoses, as Plaintiff appears to contend.  Instead, the duty to develop the record is only triggered where there is a gap in the record precluding the ALJ from conducting an adequate assessment.  *See Willow B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6891 CJS, 2022 WL 3209588, at *7 (W.D.N.Y. Aug. 9, 2022) ("However, an ALJ is not required to obtain such additional [IQ] testing where the record is already sufficiently developed.").  Here, there is no apparent gap in the record arising from a lack of recent IQ tests.  The ALJ limited Plaintiff to simple, routine tasks, with infrequent workplace changes gradually introduced, and no production-paced work, in order to address Plaintiff's cognitive limitations.  Plaintiff has not explained how updated testing would impact that determination.  *See Michael T. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0956 CJS, 2021 WL 681287, at *10 (W.D.N.Y. Feb. 22, 2021) ("Additionally, the ALJ limited Plaintiff to performing simple, routine, repetitive tasks that would not require a high level of attention to detail . . . and Plaintiff does not allege that his IQ was too low for such work.  Consequently, it is unclear to the Court what Plaintiff believes would have been gained by obtaining further IQ testing.  He does not, for example,

suggest that such testing would have shown that he met a listed impairment based on low intelligence."); *Villalobo v. Saul*, No. 19CIV11560CSJCM, 2021 WL 830034, at *20 (S.D.N.Y. Feb. 9, 2021) (finding that "an additional I.Q. test was not necessary because the ALJ had sufficient information to determine Plaintiff's functional limitations . . . "). Moreover, when asked at the hearing if anything was missing from the record, Plaintiff's counsel indicated that the record was complete, further corroborating that any lack of recent testing did not leave a gap in the record.  (Dkt. 6-2 at 49); *Pinkowski v. Comm'r of Soc. Sec.*, No. 1:19-CV-00173 EAW, 2020 WL 1969312, at *5 (W.D.N.Y. Apr. 24, 2020) ("An ALJ has taken reasonable steps to complete the medical record when she asks claimant's attorney at a hearing if the medical records before her are complete, and the attorney answers affirmatively." (quotation and citation omitted)).

As explained above, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta*, 508 F. App'x at 56.  Plaintiff's arguments amount to no more than a disagreement with the ALJ's assessment of the evidence.  Accordingly, remand is not required.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 1, 2023
Rochester, New York